WILLIAM E. DORWIN and Another, Respondents, *v.* JAMES B. WESTBROOK, Appellant.

*Contract in regard to a certificate being given for work done — promise made during the course of such work to certify it as of a certain class, not binding.*

In a contract to perform work and labor and furnish materials for the construction of a railroad, it was provided that a certain engineer was, after the completion of the work, to certify a final statement of the work done, and that in making his final certificate he was not to be bound by certificates previously made by him for part payments made under the provisions of the contract. *Held,* that a mere promise, made by such engineer at the inception or during the course of the work, that he would certify the excavation as of a certain class, is not binding upon either party where the engineer does not fulfill his promise by giving the certificate, as promised, at the completion of the work.

Appeal by the defendant, John B. Westbrook, from a judgment of the Supreme Court in favor of the plaintiffs, entered upon the verdict of a jury at the Tioga County Circuit, in the office of the clerk of the county of Tioga, on the 21st day of December, 1892, and from an order denying defendant's motion for a new trial made upon the minutes of the court and entered in said clerk's office on the 19th day of December, 1892.

The action was for a balance claimed to be due the plaintiffs for work and labor done and performed, and materials furnished under a written contract dated May 13, 1891.

*S. D. Halliday* and *Thomas D. Husted*, for the appellant.

*Sears & Lynch*, for the respondents.

Merwin, J. :

On the 13th of May, 1891, the plaintiffs and the defendant entered into a written contract, in and by which the plaintiffs, being the parties of the second part in said contract, agreed to construct, build and in every respect complete all the grading and masonry and other work required for a single-track railroad on a certain portion of the Mohawk Valley and Northern railway, commencing about five miles from the town of Malone and extending thence southwardly about one and a half miles. This was to be done in accordance with specifications annexed and made part of the contract, and all was to be done " under the direction and inspection of the company's engineers appointed to superintend the same, and to the full satisfaction and acceptance of the company's chief engineer." The work was to be completed by September 1, 1891. The defendant agreed to pay therefor, among other things, as follows : For solid rock excavation, one dollar per cubic yard ; for loose rock excavation, forty-eight cents per cubic yard ; for hard pan excavation, thirty-two cents per cubic yard ; for earth excavation, nineteen cents per cubic yard. Provision was made for monthly payments for the work done, as certified by the chief engineer, less ten per cent, and at the completion of the contract, the defendant agreed " to have a final statement made of all the work done as estimated and certified by the said engineer, together with all amounts due, including any percentage retained, and this amount so found as being due shall be paid

to the said party of the second part within thirty (30) days after the completion of said work, and payment for the same shall have been made by the Mohawk Valley and Northern Railway Company to said party of the first part, provided said parties of the second part shall give satisfactory security for the payment of any and all unpaid claims against said work."

The contract had, among others, the following clauses :

" *Third.* And it is understood and agreed that the said chief engineer, in comparing the said final estimate and giving his final certificate, need not be bound by the preceding estimates and certificates, but such preceding estimates and certificates shall be held to be only approximate to the final estimate, and the said monthly estimates and certificates on unfinished work shall in no case be taken as an acceptance of the work, or a release of the parties of the second part from responsibility therefor until the final estimate is made and the work in its entirety is accepted as complete under this contract."

" *Twelfth.* All questions, differences or controversies which may arise between the parties hereto, under or in reference to this agreement and specification, or its performance or non-performance, or the work to which they relate, or in any way whatever pertaining to or connected with said work, shall be referred to the engineer of the company, and his decision shall be final and conclusive to both parties."

In the specifications there is a provision that " the work will be executed under the direction and constant supervision of the engineer of the railway company, by whose measurements and calculations the quantities and amounts of the several kinds of work performed shall be estimated, and whose determination shall be conclusive on both parties." In the contract it is provided that " whenever the word ' engineer ' or ' chief engineer ' is used therein it shall be understood to refer to the chief engineer of the Mohawk Valley and Northern Railway Company." In the specifications it is provided that " whenever the word ' engineer ' or ' chief engineer ' is used in these specifications, it is to be understood as applying to the engineer in chief of the company, or, in his absence, his duly appointed assistant engineers- and inspectors representing him, limited by the special duties intrusted to them."

Thereupon the plaintiffs entered upon the performance of the contract and made excavation to the amount of 35,491 yards. There is no dispute about this or about the final completion and acceptance of the work. The controversy is over the classification of the excavation and the consequent price. The plaintiffs claim that soon after the work was commenced the chief engineer or the engineer in charge fixed the classification at seventy-five per cent solid rock and the balance hard pan, and that both parties, plaintiffs and defendant, agreed to this arrangement. This the defendant denies, and claims that the final certificate or estimate of the chief engineer is conclusive, which classifies the work at about forty-five per cent solid rock, forty-five per cent earth and ten per cent loose rock. If this classification is correct, the plaintiffs have concededly been fully paid. The defendant also claims a settlement and release on .the 8th of April, 1892. The plaintiffs claim there was no settlement and that the release never became operative. The recovery is upon the basis of the classification as claimed by the plaintiffs, and the absence of any settlement or operative release.

The excavation was mainly in a rocky cut for the line of the track, and the balance was in a borrow pit. Soon after the work was commenced in the cut, the plaintiffs made complaint to the defendant's agent that the engineer or assistants, who under the contract and specifications were required to make measurements, were absent and there was likely to be a delay. Thereupon, the plaintiffs or their agent and the defendant's agent called on the chief engineer, Mr. Roberts, with a view of obviating the difficulty. They to some extent looked over the work in the cut, and upon the surface it appeared to be mainly large boulders with the spaces between filled with hard pan. The evidence tends to show that then the engineer told the parties that he would classify it at seventy-five per cent solid rock, and that would do away with all dispute about measurement, and that the balance of twenty-five per cent would be classified by his assistant as the work progressed; that this arrangement was assented to by both parties, the defendant's agent saying that he was satisfied, or was satisfied if the plaintiffs were. A similar arrangement was made with the assistant engineer as to the borrow pit. There is no evidence that the remaining twenty-five per cent was classified as hard pan except that the assistant engineer

told the plaintiffs or their agent, at the time of the arrangement for the classification for solid rock, that the whole of the balance was hard pan.

The court charged the jury in substance that if the engineer made the classification then and there when they were about to enter upon the work, and said that would take the place of any further measurement, and the plaintiffs relied on it supposing that was to be the final estimate, then the plaintiffs, so far as that part of the case was concerned, could recover. To this exception was duly taken. The court had previously stated that if the material taken out of the pit and cuts was classified by the engineer, in the presence and with the consent of the defendant, before the work began, or about the time, and that the work progressed under that classification, the plaintiffs could recover the price for such classification.

Assuming then that the engineer or his assistant, in the presence and with the consent of the defendant, stated verbally that he classified the excavations in the manner claimed, and that this would take the place of any further measurement, and that plaintiffs relied on it supposing it to be final, is this sufficient to authorize the recovery?

The defendant was not personally present, but was represented by Mr. Carroll. The evidence does not warrant the conclusion that either party intended to make or consent to any arrangement outside of the contract or inconsistent with it. No new contract was contemplated or any change in the original instrument. Whatever was said or done was rather designed to be in furtherance of the contract as made and supposed to be within its scope. The conclusion is not warranted that the parties themselves assumed to make a classification. It was the act or statement of the engineer under the power given him by the contract. The engineer and his assistants were not the agents of the defendant any more than they were the agents of the plaintiffs. They were not in fact the agents of either. When, therefore, the plaintiffs, as testified to by one of them, relied on the verbal statement of the engineer, they did not rely on any act or statement made by the defendant, or for which the defendant was responsible any more than the plaintiffs were. They were not misled by the conduct of the defendant. I fail to see, therefore, how the arrangement for classification can be held to

bind the defendant upon any theory of estoppel. The cases cited by the plaintiffs' counsel do not, I think, apply.

The defendant was a contractor with the railway company and the plaintiffs were sub-contractors with the defendant. It was important for the defendant to have the kind and amount of work ascertained in such a way that it would be satisfactory to the company upon his settlement with them. He apparently was to settle with the company upon the basis of the same estimates and certificates of the engineers that were provided for settlement with the plaintiffs. Under the contract, the final payment for the work, from the defendant to plaintiffs, was not due until after the defendant had received payment for the same from the company. In ascertaining the amount, a final statement was to be made of all the work done " as estimated and certified by said engineer," and it was expressly provided that the engineer, in making his final estimate and certificate, need not be bound by the preceding estimates and certificates, but that they should be held to be only approximate to the final estimates. These provisions were vital to the defendant in view of his relation to the company, and an intent on the part of the defendant to waive them should be clearly established.

It is not to be supposed that any of the parties believed that the verbal arrangement with the engineer would take the place of the certificates called for by the contract. In effect then the arrangement was that the engineer, when he came to make his preliminary and final estimates, would treat the excavation as seventy-five per cent solid rock. He failed to keep his promise. Does it follow that the defendant is responsible the same as if he had kept it, thereby nullifying the provisions of the written contract, and that too without evidence that the solid rock was as much as the proposed classification would make it ?

It is quite evident that none of the parties intended to waive any of the provisions of the contract. The trouble arises from the failure of the engineer to carry out his promise. He denies he made it, but assuming that he did, as the jury have found, it was not a certificate such as the contract called for as a basis for payment, and the evidence is not sufficient to show that the parties agreed or intended it should be. It may be that if the engineer in his final certificate did not give as large a percentage of solid rock as in fact

there was, or the final certificate was made under circumstances that amounted to a fraud, the plaintiffs, under proper allegations, would have a remedy. This action, however, is on the contract, and upon the evidence a recovery is not warranted, based simply on a verbal agreement or promise by the engineer, made before the work was done, that the classification was or should be at a certain rate, and which was not in fact carried out in the final estimates.

The defendant also claims that the plaintiffs are barred by a release given by them on the 8th of April, 1892. The plaintiffs claim that they did not knowingly or intentionally execute it, but were induced to sign it on the representation of the agent of defendant that it was a receipt for money they were then receiving and that there was not in fact any settlement. The question whether it was executed under the circumstances claimed by plaintiffs, was left to the jury, upon the charge, in substance, that if so executed it would not be a bar, and the court declined to charge that if they might have read it they could not avoid it on the ground that they did not read it. Whether the questions as to the release were properly given to the jury, it is not necessary here to discuss, in view of the conclusion on the other branch of the case.

HARDIN, P. J.:

While concurring in the foregoing opinion, I deem it not inopportune to add that the evidence tends very strongly to support the release and settlement, and in respect thereto the verdict seems to be against the weight of the evidence. (*Phelan* v. *Mayor*, etc., 119 N. Y. 86.)

I think there should be a new trial.

Judgment and order reversed and new trial granted, costs to abide the event.