| 86 363
| 11ap395

WILLIAM E. DORWIN and Another, Respondents, *v.* JOHN B. WEST-BROOK, Appellant.

*Engineer's final estimate — proof as to a different classification of similar work done at another place — fraud in making estimates — written instrument under seal, when disregarded.*

A contract to perform work and furnish materials for the construction of a railroad provided that the engineer of the work was, after its completion, to certify by a final statement the amount of the work done. Two sub-contractors brought an action against the contractor for an amount alleged to be due them upon the contract, and alleged in their complaint that the final estimate of the engineer was false to his knowledge, and was so made in order to defraud the plaintiffs.

*Held,* that it was erroneous to admit, upon the trial of the action, evidence that upon other excavations in other places the engineer had classed as solid rock material similar to that which he refused to class as solid rock in the excavation in question, it not appearing that the contract under which such classification was made was the same as the contract in the present case ;

That if the engineer was guilty of fraud in making his final estimate, the plaintiffs might recover, upon proof of performance, without connecting the contractor with the fraud.

Where written instruments under seal are signed by parties having full opportunity to know their contents, they cannot be disregarded except upon reasonably clear proof that their execution was obtained by fraud.

MARTIN, J., dissenting.

APPEAL by the defendant, John B. Westbrook, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Tioga on the 9th day of June, 1894, upon the verdict of a jury rendered after a trial at the Tioga Circuit; also from an order entered in said clerk's office on the 26th day of May, 1894, denying the defendant's motion for a new trial made upon the minutes, and also from an order made during the trial denying the defendant's motion for a nonsuit.

The plaintiffs were sub-contractors under the defendant to per-

form a part of a contract to construct a railroad. The contract provided that the engineer, one Roberts, should, after the work was completed, certify by a final statement the amount of work done and his determination was to be conclusive upon both parties to the contract.

The character of the contract sued upon and the nature of the claim of the plaintiffs appear in the report of the case on a former appeal (71 Hun, 405).

*Thomas D. Husted* and *S. D. Halliday,* for the appellant.

*Martin S. Lynch,* for the respondents.

MERWIN, J.:

After the decision of this case on a former appeal (71 Hun, 405) the complaint was amended by adding allegations that the final estimates of the chief engineer, Roberts, were inaccurate and false to his knowledge, and were so made for the purpose of cheating and defrauding the plaintiffs, and that the defendant refused to appear with plaintiffs before the engineer, for the purpose of obtaining correction of the same. The main issues litigated at the trial now under review were whether the action of the engineer was in bad faith and fraudulent, and whether the release of the 8th of April, 1892, signed by the plaintiffs was operative. Both of these issues were found in favor of the plaintiffs. The defendant claims that as to the release the verdict is against the evidence, and he also claims that the court erred in admitting in evidence declarations of the engineer as to the character of the excavation in controversy, and also his acts in regard to classification of other excavations. The declarations of the engineer tending to show that he in fact knew that his final estimate was wrong would seem to be competent on the issue as to his fraudulent intent. His acts as to other excavation with which the defendant was not connected present a different question. The plaintiffs called as a witness one Harvey, an engineer, who testified that in 1891 he was engaged on the railroad, though not at the particular place in question, and had been on the road and examined the cuts and borrow pit in question; that he knew what classification the engineer, Roberts, placed upon similar material to that taken out of this piece on other parts of that line, and the witness was then allowed to state,

over the defendant's objection and exception, that Roberts classified similar cuts as solid rock. This is claimed to be competent on the subject of the intent of the engineer in the classification of the plaintiff's work at a less rate of solid rock. It, however, called for the investigation of a subject outside of defendant's contract, and which defendant would not be supposed to be prepared to meet. It did not appear that the contracts under which such classification was made were similar to the contract here. In some cases other contemporaneous acts of fraud are admissible on the question of intent. The rule is one that needs to be carefully applied, especially when the rights of third persons are involved. We think it should not be applied here, and that the evidence objected to was improperly admitted. Nor can we properly say that it was harmless.

The defendant also claims that the court erred in declining to charge that " the plaintiffs cannot recover by reason of any fraud or dishonesty of the chief engineer in the final estimate, without connecting the defendant Westbrook with that fraud." In *Sweet* v. *Morrison* (116 N. Y. 19), which was a case quite similar to this as to the situation of the engineer, it was said at page 34 that, " in the absence of proof of corruption, bad faith or misconduct on his part, or palpable mistake appearing on the face of the estimate, neither party can be allowed to prove that he (the engineer) decided wrong as to the law or facts." The inference would be that if bad faith and fraud on his part were shown, the estimate would not be conclusive. An award may be attacked for fraud on the part of the arbitrator. (*Masury* v. *Whiton*, 111 N. Y. 679 ; *Hoffman* v. *De Graaf*, 109 id. 638 ; *Perkins* v. *Giles*, 50 id. 232 ; Morse on Arbitration & Award, 539.) If an architect's certificate is refused in bad faith or unreasonably, a recovery may be had on proof of performance. (*Bowery National Bank* v. *Mayor*, 63 N. Y. 336 ; *Doll* v. *Noble*, 116 id. 233.) We think that the court did not err in declining to charge as requested. If, for any reason, in order to protect the rights of the defendant with the railroad company, the latter should have been made a party to the litigation over the estimate of the engineer, the defendant should have taken the proper steps to have brought the company in. No defense on that line is set up.

Upon the subject of the release, the claim of the plaintiffs, in substance, is that its execution by the plaintiffs was fraudulently pro-

cured by the defendant or his agents. The plaintiffs were partners and the release was signed by the plaintiff W. E. Dorwin in the name of the firm, and no question is made about his authority to sign for the firm such an instrument. It was under seal, and that, as the court charged, and as we must assume, was conclusive evidence of consideration. (*Gray* v. *Barton*, 55 N. Y. 71.) Dorwin testified that he did not know the contents of the paper; that he was told that it and other papers he there signed were receipts, and signed them on that supposition. The court charged that "if Mr. Dorwin knew it was a release he was signing, or if Mr. Dorwin was not deceived by the statement made to him, that it was a receipt, did not rely upon that statement, might as easily have read it as not, but was deterred from reading it, only by the fact that he relied upon the statement that it was a receipt, it was his duty to know what he was signing, and he is barred by this paper;" that "he has got to satisfy you that he did not understand that he signed that paper, knowing it to be a release, but that he was deceived purposely and intentionally by those parties who called it a receipt and directed his attention from the true condition of affairs, and thereby got a discharge of the claim without his knowing it. The burden of proof is with him to satisfy you upon all those facts." The jury in effect, therefore, found that Dorwin did not know that he was signing a release, and that the defendant or his agent purposely deceived him, and by artifice obtained his signature.

The transactions between the parties on the 8th of April, 1892, related to two contracts for railroad work. As to one there appears to have been no complaint at any time about the final estimate of the engineer. The other was the contract on which this action is based. Upon that occasion the plaintiff W. E. Dorwin signed eight papers, four as to each contract, there being as to each a receipt in full, a release under seal, a surrender in writing of the original contract, and an affidavit of no outstanding claims against the property. The papers were prepared by Mr. Husted, who was present, acting as attorney for the defendant, and the release, affidavit and receipt of each set were attached to the original contract upon which the surrender was written. The receipt and surrender were signed "W. E. Dorwin & Co.," the release "W. E. Dorwin & Co. by W. E. Dorwin," and the affidavit "W. E. Dorwin." The

releases were acknowledged, and the affidavits sworn to before Mr. Husted as notary public. A week or two before this, Mr. Dorwin called on the defendant, and, as Mr. Dorwin testifies, claimed that the estimate of the engineer was not correct, and wanted the defendant to go to the engineer and have it corrected, to which defendant replied that "he couldn't go, and told me to go and do the best that I could and he would be satisfied with whatever I did." Dorwin saw Roberts the next day, but he refused to change the estimate. At the interview on the eighth of April, nothing, so far as appears from the testimony of Dorwin, was said about his interview with Roberts. They figured up the amount due on the basis of the engineer's estimate, and then the defendant, at the request of Dorwin, drew and gave him eleven checks for different amounts, being amounts that plaintiffs owed to different parties. A statement of the account was prepared and given to Dorwin. This was headed, "W. E. Dorwin & Co., in acc. with John B. Westbrook," and the first item was a credit "Mch. 29, By balance rendered, $7,431.70." The eleven checks were then charged, each being described, and amounting in the aggregate to $6,286.81, and the last entry was "by balance, $1,144.89." This balance, as it seems to be conceded, was held by defendant to await the discharge of two liens understood to have been filed. After the checks were drawn then, as Dorwin testifies, "Mr. Husted handed me over some papers, with one hand on the papers, and said 'Sign those receipts,' and took the other hand and turned them up and showed me what to sign and I read nothing and saw nothing read; there was not one single word read to me on that day. * * * I signed a number of times because I was receiving a number of different checks. * * * Mr. Husted didn't take any acknowledgment from me at that time and I didn't swear to any affidavit. * * * When I signed those papers, I had no knowledge of what the papers contained. I never had read them or heard them read, and their contents was not stated to me in any way. * * * I believed I was signing receipts for the money that I got for the several checks." On the part of the defendant it was shown by the testimony of the defendant himself, his clerk who drew off the account, and Mr. Husted, that all the papers, including the releases, were read over to Mr. Dorwin, and that there was then a complete and full settlement of both contracts. Taking the version of Mr.

FOURTH DEPARTMENT, APRIL TERM, 1895.          [Vol. 86.

Dorwin to be correct, nothing was done to prevent his reading the papers; they were called receipts, but nothing was said that they were only receipts for the checks or the money represented by the checks. Dorwin made no reservation of his claim for wrong classification. The defendant testifies that Dorwin said he had concluded to settle on the basis of the estimate as made, and his acts as testified to by himself render that probable; and, besides, he does not deny that he made the statement as the defendant testified. The defendant had other railroad contracts; and Dorwin, prior to this occasion, had, as he admits, knowledge of the custom of defendant, on the settlement of his contracts, to require the execution of releases such as were executed here. He then must have known that as to the undisputed contract involved in this transaction the defendant would be apt to require such a release. Dorwin says he supposed that all the papers he signed were ordinary receipts for the moneys represented by the checks, but the truth of this supposition is shaken by the fact that he signed in different ways. He was a business man of long experience. This supposition is also shaken by the fact that in calling by letter on the fourth of May following, for the balance of the money reserved, he referred to it as being already receipted for.

The claim of the plaintiffs is in substance that the release and surrender were procured by fraud. The evidence does not, we think, sustain this claim. Written instruments, signed by parties who have full opportunity to know their contents, should not be stricken down unless the evidence is reasonably clear that in obtaining their execution a fraud has in fact been committed. The verdict in this case to the effect that the defendant or his agents purposely deceived Mr. Dorwin, and by artifice obtained his signatures, and that he did not understand the true character of the papers, is, we think, against the weight of the evidence.

The judgment and order should be reversed and new trial ordered, costs to abide the event.

HARDIN, P. J., concurred.

MARTIN, J. (dissenting):

The recovery in this action is obviously just. That the defendant was indebted to the plaintiffs to an amount at least equal to the

amount of the verdict clearly appears from the evidence. The jury was warranted in finding that the work performed by the plaintiffs was incorrectly classified by the engineer in charge and that he acted fraudulently and in bad faith in making such classification. The classification having been found to be fraudulent and made in bad faith, it was not binding upon the parties.

I think the evidence of the witness, Harvey, which showed that the engineer in charge had classified similar material taken out on the same line as solid rock, while he classified that taken out by the plaintiffs as only forty per cent solid rock, was admissible to show that the engineer was acting in bad faith in making such classification.

Nor was the finding of the jury that the signatures to the releases signed by the plaintiffs were obtained fraudulently so far against the weight of evidence as to justify us in granting a new trial. The question whether the plaintiffs' signatures to such releases were obtained by artifice and by the fraudulent representations of the defendant that they were only receipts for the money which he paid to the plaintiffs, or whether, as claimed by the defendant, they were read over to the plaintiff Dorwin and understood by him, was a question of fact for the jury. While upon that question the defendant had the greater number of witnesses, yet the plaintiffs' testimony was corroborated by circumstances which tended to render it improbable that he would have signed the releases in question unless the alleged fraudulent representations had been made. Upon that question the testimony was conflicting, and it was properly submitted to the jury. It is not enough that this court might have reached a conclusion adverse to that of the jury as to the force and weight of the evidence. A verdict should be set aside on the ground that it is against the weight of evidence only where it is so clearly and manifestly against the preponderance of evidence as to furnish proof in itself that the jury was influenced by passion, prejudice, corruption, gross ignorance or mistake. Applying that rule to this case, it becomes quite obvious that the verdict should not be disturbed.

Moreover, if the court were of the opinion that the discretionary power which rested in the trial judge to set aside the verdict as

against the weight of evidence was not properly exercised, and that a new trial should be granted upon that ground, it should be granted only upon the payment of costs by the appellant.

I think the judgment should be affirmed, or, if a new trial is to be granted on the ground that the verdict is against the weight of evidence, it should be upon the payment of costs by the defendant.

Judgment and order reversed and a new trial ordered, costs to abide the event.