(13 App. Div. 16.)

### STEVENS v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division, Third Department. January 6, 1897.)

1. CONTRACTS—INSPECTION OF AGENT'S ACCOUNTS.
   An insurance agent who agrees that his accounts may be inspected by any one authorized by the insurance company, and that the report of such inspection shall be conclusive, is bound by such report, unless it is proved that the inspector was without authority, or acted in bad faith.

2. SAME—AUTHORITY OF INSPECTOR.
   The authority of one who inspected an insurance agent's accounts for the insurance company is not a question for the jury, where the inspector testifies that he had the requisite authority, and he is not cross-examined, or contradicted by any evidence on the agent's behalf.

Appeal from trial term, Broome county.

Action by Erskine E. Stevens against the Metropolitan Life Insurance Company on a contract. From a judgment on a verdict for plaintiff, and from an order denying a motion for a new trial made on a case and exceptions, defendant appeals. Reversed.

Argued before PARKER, P. J., and HERRICK, PUTNAM, and MERWIN, JJ.

John De Witt Peltz and Martin T. Nachtmann, for appellant.
S. Mack Smith and James T. Rogers, for respondent.

MERWIN, J. On the 28th July, 1894, the plaintiff, under a written contract, entered into the employ of the defendant as an agent to canvass for insurance and collect premiums. The contract provided for compensation to the agent in two forms,—one known as "ordinary salary," and the other as "special salary," which depended on the excess of new business obtained by and credited to him over policies lapsed and charged against him, either during the continuance of the agency, or within six weeks after its termination. The plaintiff remained in the employ of the defendant until April 17, 1895, when he resigned. At the time the plaintiff went to work for the defendant, he received from its superintendent a pamphlet or circular in which, under the head of "Agents' Gratuities," there was the following:

"To any agent whose first official credit for business is on or after January 1, 1894, and who continues uninterruptedly in the service of the company, either as agent or assistant, for a term of one year, there will be paid in cash, within thirty days after the expiration of each year, a gratuity of $100. The payment of any gratuity will be subject to the agent's being in the service of the company, and of his account being in a condition entirely satisfactory to the company, at the time the payment falls due."

The first official credit of the plaintiff with the defendant was on or about the 14th March, 1894, and he remained uninterruptedly in its employ until he resigned. On the 28th May, 1895, he demanded payment of $100 for agent's gratuity, under the offer in the circular. On the 12th June, 1895, the defendant refused to pay, claiming that the plaintiff was indebted to the defendant more than the amount of $100. This action was then brought to recover the $100, the plaintiff claiming that he had fully performed the conditions of the offer. In defense, the defendant, among other things, claimed that the plaintiff was indebted to it, in more than the amount of the $100, for moneys for which he was accountable under the provisions of the written agreement between the parties. One of the provisions of this agreement on the part of the plaintiff was as follows:

"(7) I agree that the condition of my account with the company, either before or after the termination of my employment by the company, shall be ascertained and determined by an inspection of my weekly accounts, or my ledger, and by my collection book, or the premium receipt books of the policy holders included in my debit. Such inspection may be made, at the direction of the company, at any time, with or without notice to me, and by any person authorized by the company to make it; and when made, whether before or after the termination of my agency, and whether I shall be present at the inspection or not, I agree that the actual condition of my account with the company shall be determined by the report of the inspection as it shall be made by the authorized person aforesaid, as he shall compute the same from his entries in the inspection book. And I hereby give such employé who shall inspect my agency as aforesaid full power and authority to compute the sum due by me to the company as it shall appear upon such inspection by him, and I hereby ratify his computations, and agree that the result shall be my indebtedness to the company; hereby waiving the production of any evidence other than such report and account."

After the plaintiff resigned, an inspection was made, in pursuance of this provision of the contract, by an agent of the company; and from the report of such inspection, which the defendant offered in

evidence, it appeared that the plaintiff was indebted to the defend-
ant in the sum of $111.45. This indebtedness, mainly if not en-
tirely, was due to the large number of lapses of policies solicited by
the plaintiff, for which, to a certain extent, the plaintiff was respon-
sible, under the contract, and upon the basis of the continuance of
which the plaintiff had received the special salary. At the close of
the evidence the defendant, in substance, asked the court to rule
that upon the undisputed evidence the plaintiff was indebted to the
defendant, under the contract, in the sum of $111.45. This the
court refused to do, but held that if the company did appoint some-
body to look over the accounts and make a report, and that was
done in good faith, the plaintiff was bound by the report. The de-
fendant excepted. The case was accordingly submitted to the jury,
it being left to them to say whether the agent who made the inspec-
tion was authorized by the company to do it, and whether he did
it honestly. The jury, by its verdict for plaintiff for the $100 and
interest, in effect found against the defendant on one or both of
these propositions.

Mr. Atkins, the agent who made the inspection, was the superin-
tendent of the defendant in that locality at and prior to the time
plaintiff resigned, and had charge of 35 agents and assistants, and
was such superintendent at the time of the trial. He testified that
he was authorized to examine the accounts of the agents in his dis-
trict, of whom the plaintiff was one, and that he made his report
from the inspection of the books kept by the plaintiff. He was not
cross-examined as to his authority, and no evidence was given by
the plaintiff on the subject. When the report of inspection was
offered in evidence, it was not objected that there was any want
of authority in the agent to make it. Whether the agent who made
the inspection was authorized to make it was not, I think, a ques-
tion for the jury.

Nor was the evidence sufficient to authorize the jury to find that
the agent did not act in good faith in making the report. There was
no effort on the part of the plaintiff to show that the lapses upon
which the account was based did not occur, or that they were not
within the purview of the contract, or that any mistake was made
by the agent in his calculations. The plaintiff testifies that when
he resigned he had an accounting with Mr. Atkins, but does not testi-
fy, as he might, if true, that he has ever satisfied his liability to the
defendant for the lapses which enter into the report of inspection,
or that such lapses did not occur. He proved that Atkins, on one
or two occasions before plaintiff resigned, stated that plaintiff would
get his $100 endowment; but these statements were before the
inspection was made, and so were of but little importance. The
report of the inspection was, in its effect, somewhat analogous to
the estimate of an engineer by whose award both parties to a con-
tract have agreed to abide. Of such a case it is said "that in the
absence of proof of corruption, bad faith, or misconduct on his [the
engineer's] part, or palpable mistake appearing on the face of the
estimate, neither party can be allowed to prove that he decided

wrong as to the law or facts." Sweet v. Morrison, 116 N. Y. 19, 34, 22 N. E. 276.    See, also, Owiter v. Insurance Co., 4 Misc. Rep. 543, 24 N. Y. Supp. 731; Insurance Co. v. Long, 65 Ill. App. 295.· As the case stood at the close of the evidence, the defendant was entitled to the ruling that the report of inspection bound the plaintiff, and the court erred in submitting to the jury the questions as to the authority of the agent and his good faith.   It follows that there should be a new trial.   All concur.

Judgment and order reversed, and new trial granted; costs to abide the event.