(24 Misc. Rep. 158.)

### JONES v. SAVAGE et al.

(Supreme Court, Special Term, Erie County.   June, 1898.)

**1. CONTRACTS—ABANDONMENT—RIGHT OF ACTION.**

Where one contracted with a city to erect a building for an agreed price, and was to be paid a percentage on estimates, the final payment to be made on a final certificate by the architect, and the city, in case the contractor abandoned his contract, was to complete the work·at the contractor's expense, such contractor, having so abandoned the work, and ·the architect having found him indebted to the city for the cost of completing it, has no right of action against the city.

**2. SAME—RIGHTS OF ASSIGNEE.**

The assignee and creditor of a contractor who abandoned his contract with the city cannot occupy any better position thereunder towards the city than the assignor.

**3. SAME.**

Where a contract for a building at an agreed price provided for payments on architect's estimates, which it stipulated were not conclusive, the assignee of such contractor cannot complain that by errors in the estimates he was deceived.

**4. LIENS OF SUBCONTRACTORS.**

Where a city paid a percentage on estimates of work done on a contract, and retained the balance, the contract providing that the estimates were not conclusive and that final payment should only be made on completion of the work, there is no indebtedness of the city to which a lien of the contractor's creditor might attach until completion, and the sums retained are not debts.

**5. LIABILITY OF CITY—CONTRACT—COLLUSIVE ABANDONMENT.**

A city is not liable to the creditor and assignee of its contractor by reason of the alleged actions of the deputy comptroller in fraudulently inducing an abandonment of the contract.

**6. ESTOPPEL.**

The assignee of a building contract cannot urge the collusive scheme of his assignor with a city official to fraudulently abandon the contract as reason for recovering from the city.

**7. CITY—UNAUTHORIZED CONTRACT.**

The fact that the board of public works completed an abandoned building contract without advertising for bids on the work,—it being in excess of $500,—as required by Rev. Charter Buffalo, tit. 10, § 283, cannot be availed of by assignees of the contractor suing on the contract.

Action by William L. Jones against William L. Savage and others. Complaint dismissed.

William L. Jones, in pro. per.

William H. Cuddeback and James L. Quackenbush, for city of Buffalo.

Henry Chace, John H. Brogan, Strebel & Corey, and Creamer & Patterson, for lienor defendants.

SPRING, J.   On the 25th day of September, 1895, William L. Savage & Co. entered into a written agreement with the city of Buffalo to furnish the materials and do the masonwork in the construction of the Masten Park high school building according to certain plans and specifications which were made a part of the contract.   The agreed price to be paid Savage & Co. for this work and the requisite materials was $45,999.99.   Payments were to be made as the work progressed, upon the certificates of the architects, excepting a reservation of 10

per centum, which was not to be paid until the entire fulfillment of the contract. The final payment was to be made upon the final certificate of the architects, which was to be conclusive between the parties. The intermediate certificates were designed to furnish a basis for payments upon the contract price, but were evidently not expected to be accurate statements of the progress of the building, and the contract provided these were not to be conclusive. On the 9th of July, 1896, the contractors, by a written instrument duly signed and presented to the board of public works, abandoned the further prosecution of the work. In case of this contingency the city was permitted by the contract to complete the work prescribed therein at the expense of the contractors. The city availed itself of this privilege, and the architects have certified the expense incurred by the city in so doing was $6,135.94 in excess of the contract price. This statement of facts must establish that Savage & Co. have no right of action against the city. They entered into an agreement which they not only have failed to complete, but its completion by the city has added largely to the contract price. The architects have so certified, and no fraud, mistake, or corruption impeaches or countervails this certificate, and it, therefore, is conclusive, as stipulated in the contract. Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276; Byron v. Low, 109 N. Y. 291, 16 N. E. 45; Everard v. City of New York, 89 Hun, 425–428, 35 N. Y. Supp. 315; Dorwin v. Westbrook, 86 Hun, 363–365, 33 N. Y. Supp. 499; Spink v. Insurance Co., 25 App. Div. 484, 49 N. Y. Supp. 730; Stevens v. Insurance Co., 13 App. Div. 16, 43 N. Y. Supp. 60; Smith v. City of New York, 12 App. Div. 391, 394, 395, 42 N. Y. Supp. 522; Commissioners v. Sullivan, 11 App. Div. 472–477, 42 N. Y. Supp. 358.

The plaintiff brought his action the latter part of June, 1896, before the abandonment by the contractors, and, of course, before the completion of the work. He sets forth in his complaint three causes of action: First. An assigned demand of certain material men who had furnished brick for Savage & Co., which was used in the construction of the building. Second. A like claim for materials furnished by plaintiff himself. Third. A demand for moneys advanced by him to Savage & Co., used in paying laborers and carrying out the contract, and which was secured by an assignment of the contract, of which the city had notice, and the claims for materials were filed as mechanics' liens upon the property.

However meritorious these demands may be against Savage & Co., they are of no higher grade and place plaintiff in no different position than if pressed by the contractors. The rights of the parties must still be determined by the agreement, and, as the certificate of the architects bars any recovery by the contractors, it is of like force in preventing recovery by the plaintiff.

There are certain propositions urged by the plaintiff requiring some examination:

1. He relies upon the fact that the statements from time to time certified to by the architects showed the work nearer completion than indicated by the final certificate, and urges he was deceived thereby. The agreement, with which he must be assumed to have been familiar,

explicitly provided these intervening certificates were not to be conclusive, so the plaintiff and any others who furnished money or sold materials to Savage & Co. relying upon these certified statements did so at their peril. The architects were not agents of the city to bind it in these statements, but they were for convenience to furnish some basis, some warrant, for payments to be made to Savage & Co. by the city. The concluding certificate of the architects, with the statement accompanying it, shows there was nothing due the contractors when this action was commenced. The payments had been made before they were earned. Savage & Co. could not recover if they were plaintiffs in this action, as it would be incumbent upon them to present the final certificate showing completion in accordance with the agreement. President, etc., of Delaware & H. Canal Co. v. Pennsylvania Coal Co., 50 N. Y. 250; Byron v. Low, 109 N. Y. 291, 16 N. E. 45; Phelan v. Mayor, etc., 119 N. Y. 86, 23 N. E. 175; cases supra.

In case of abandonment and consequent completion by the owner, the contractors are entitled to the surplus, if any, remaining, but the condition precedent is still the architects' certificate, and it operates in favor, as well as against, the contractors. It is the judgment or award agreed to be final by the parties, and has that effect, unless impaired or invalidated by fraud or apparent mistake. The fact these contractors were paid more than they were entitled to receive under the contract could not now be urged in their behalf, and plaintiff possesses no more secure vantage ground than his assignors or debtors.

2. It is claimed at the time the liens were filed and at the time of the abandonment the city was indebted to the contractors on the contract and the lien of plaintiff attached to that indebtedness. There is no support for the premise. The whole fabric of that argument depends upon the accuracy of the intermediate certificates, and, I have stated, they are not binding against the city. As a matter of fact, there was no indebtedness, but Savage & Co. had been largely overpaid. The retention of the 10 per centum was for the benefit of the city (Weisemair v. City of Buffalo, 57 Hun, 48, 10 N. Y. Supp. 569), and the liens could only attach to what was due upon the completion of the contract by Savage & Co. Brainard v. Kings Co., 155 N. Y. 538, 50 N. E. 263; Van Clief v. Van Vechten, 130 N. Y. 571–577, 29 N. E. 1017; Beardsley v. Cook, 143 N. Y. 143, 38 N. E. 109; McChesney v. City of Syracuse, 75 Hun, 503, 27 N. Y. Supp. 508. In defining when liens of subcontractors attach, the court of appeals in 130 N. Y. 571–577, 29 N. E. 1017, and again indorsed in 155 N. Y., at page 544, and 50 N. E., at page 264, say:

"(1) If anything is due to the contractor, pursuant to the terms of the contract, when the lien is filed, it attaches to that extent. * * * (3) If nothing is due to the contractor, pursuant to the contract, when the lien is filed, and he abandons the undertaking without just cause, but the owner completes the building according to the contract and under a provision thereof permitting it, the lien attaches to the extent of the difference between the cost of completion and the amount unpaid when the lien was filed."

To determine whether anything was due at the time of the filing of the lien, it is necessary to consider the situation, in view of the abandonment and the subsequent completion of the work by the

city, and it is apparent, then, that nothing was due when the liens were filed, but the city had exceeded its obligations in making payments.

3. The plaintiff with much vigor claims the abandonment was fraudulently induced by the deputy comptroller. If so, then by his own statement Savage was in the mire with that official. He presented a formal abandonment to the board of public works, prefacing it with the statement he could not complete the work. There is no suggestion of any collusion with the board, and no pretense he made known to them of any dickering with the deputy comptroller. This whole story of the alleged fraud of the deputy comptroller savors of fabrication. Incriminating charges were made against that official in connection with the erection of the school building, and they furnished a tempting opportunity to make a scapegoat of him, and endeavor to explain away, with some show of plausibility, the damaging effect of this abandonment. Savage had previously stated to Beebe he desired to abandon his contract; the work was progressing slowly; liens were being filed against the property; plaintiff had commenced this suit; there was little prospect of realizing anything on this undertaking; and a crisis in his affairs was imminent. The reasons for the abandonment lie on the surface like pebbles, and it is unnecessary to smirch any official to justify or excuse what is patent. But granting the abandonment was procured by the improper intervention of the deputy, still that fact does not inure to the benefit of the plaintiff. That official had no authority to bind the city in the matter. The abandonment was carried into effect with the board of public works, with whom the authority rested, and whatever the comptroller did was either as the paid attorney of Savage or as a mere volunteer.

Again, if any scheme of fraud was afoot to delude the board of public works, Savage was in it equally with the deputy, and cannot now complain because the effort bore no fruit to him. The subsequent conduct of Savage belies his story. The city after this assumed charge of the work, paid the men, furnished the materials, and Savage continued there without compensation and without authority, to see that the work was done economically, and that something might be saved for him if possible.

4. Section 283 of title 10 of the Revised Charter of the city of Buffalo requires the board of public works to receive bids in every expenditure in excess of $500, and to let contracts therefor to the lowest responsible bidder. The completion of this work was not performed in this way, and the plaintiff urges that as a reason why he should succeed. Just where the connection is, it may be difficult to ferret out. The plaintiff relies upon the agreement with Savage & Co., and that complied with the charter. Without excuse they abandoned the contract, and, while taxpayers might justly criticise any expenditure not strictly within the salutary provisions of the charter, Savage & Co., or their successors in interest, cannot avail themselves of any such omission. McChesney v. City of Syracuse, 75 Hun, 503–507, 27 N. Y. Supp. 508. The city was obliged to complete this building after the refusal of the contractors to comply with their contract. Plaintiff had commenced suit, alleging his liens already at-

tached; and in conservation of the rights of the taxpayers, and to insure plaintiff in his liens, if any surplus remained, it must carry out the agreement. This it did, and plaintiff's position is now proven to be untenable. If plaintiff had been paid it would, in effect, have been paying the contractors, whom the city did not owe.

The complaint will. be dismissed, with costs in favor of the city. Complaint dismissed, with costs.