(66 Misc. Rep. 273.)

### ATTERBURY v. TRUSTEES OF COLUMBIA COLLEGE et al.

(Supreme Court, Special Term, New York County. February, 1910.)

1. ARBITRATION AND AWARD (§ 16*)—RIGHT TO REVOKE.

   An arbitration under a clause in a lease is not revocable.

   [Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 64; Dec. Dig. § 16.*]

2. ARBITRATION AND AWARD (§ 16*)—WITHDRAWAL.

   After final submission to the arbitrators, neither can withdraw.

   [Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 65; Dec. Dig. § 16.*]

3. ARBITRATION AND AWARD (§ 35*)—WITHDRAWAL OF ARBITRATOR—EFFECT.

   Where the arbitration clause in a lease permits a majority decision, the withdrawal of one of the arbitrators and his refusal to act after one party has attempted to withdraw will not affect an award made the same day by the other arbitrators.

   [Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 189; Dec. Dig. § 35.*]

4. ARBITRATION AND AWARD (§ 41*)—COMPENSATION OF ARBITRATORS—RIGHT OF ACTION.

   Where the compensation for arbitrators is not expressly agreed upon, the arbitrator may maintain an action against the parties to recover on a quantum meruit.

   [Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 211; Dec. Dig. § 41.*]

5. ARBITRATION AND AWARD (§ 46*)—REMARKS OF ATTORNEYS—WAIVER OF OBJECTION.

   Where, pending a discussion by the attorney for defendant as to the compensation to be paid the arbitrators, in which the attorney for plaintiff said he could not stipulate without consulting his principal, and the attorney for defendant stated that he would see the arbitrators paid, adding, "We control that under the lease," the discussion, though improper, will not invalidate the arbitration where plaintiff took the chances of a favorable award and made no objection until after an adverse award.

   [Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 237; Dec. Dig. § 46.*]

Action by J. Turner Atterbury against the Trustees of Columbia College and others to set aside an appraisal. Complaint dismissed.

Dixon & Holmes (David Leventritt, of counsel), for plaintiff.
Nash & Jones (Austen G. Fox, of counsel), for defendants.

O'GORMAN, J. This is one of 31 suits tried together; and is brought to set aside an appraisal of the "full and fair value" of a lot of land in the city of New York, and of the "reasonable yearly ground rent for said lot of ground for the succeeding terms of 21 years." Pursuant to the terms of the lease, the lessor and lessee named arbitrators, who, being unable to agree, selected a third arbitrator; the parties having previously waived the requirement that the third arbitrator should be a freeholder. The award subsequently made by the third arbitrator and the defendants' arbitrator is assailed on various grounds.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff claims that he was induced to waive the real estate qualification of the third arbitrator by reason of the defendants' fraud; that the third arbitrator was not "fit and impartial"; that there were serious irregularities during the progress of the proceeding; that the plaintiff withdrew from the arbitration before the award was made; that the award was made without consultation with the plaintiff's arbitrator; and that the defendants' attorney was guilty of gross impropriety in proposing in the presence of the third arbitrator that an excessive fee be paid to him. The evidence in the case gives no support to these objections. In my judgment no deceit was practiced in regard to the choice of the third arbitrator, who appears to be an experienced real estate broker, well and favorably known to the plaintiff's arbitrator; and his selection by the plaintiff and the waiver of the real estate qualifications were induced apparently by the advice of the plaintiff's arbitrator rather than by the suggestion of the defendants' attorney.

The failure of the third arbitrator to take the oath as required by the lease before he entered upon the discharge of his duties was a mere irregularity, and was waived by the parties' proceeding without a demand that he be sworn. Terry v. Moore, 3 Misc. Rep. 289, 22 N. Y. Supp. 785. Moreover, he took the oath a few days later and proceeded with the arbitration without objection. Plaintiff's attempt to revoke the arbitration after final submission of the proceeding to the arbitrators and after he had learned that the third arbitrator would not yield to the views of the plaintiff's arbitrator, was ineffectual. An appraisal clause in a lease is as binding· as any other provision in a contract, and is not revocable like a common-law or statutory arbitration. Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276, 15 Am. St. Rep. 376; Wurster v. Armfield, 175 N. Y. 256, 67 N. E. 584. Even in a revocable arbitration neither party has the power to withdraw after the allegations and proofs have been made and the matter has been finally submitted to the arbitrators. People ex rel. Ins. Co. v. Nash, 111 N. Y. 310, 18 N. E. 630, 2 L. R. A. 180, 7 Am. St. Rep. 747; N. Y. L. & W. W. A. Co. v. Schnieder, 119 N. Y. 478, 24 N. E. 4. The plaintiff's attorney having sent his letter of attempted withdrawal to the attorney for the defendants and having notified the plaintiff's arbitrator of such withdrawal, that arbitrator on the following morning informed the third arbitrator of the withdrawal, and stated that he would have nothing further to do with the matter. His refusal to act cannot affect the validity of the award made on the same day by the third arbitrator and the defendants' arbitrator, as the lease permitted a majority decision. Zorkowski v. Astor, 13 Misc. Rep. 507, 34 N. Y. Supp. 948, affirmed 156 N. Y. 393, 50 N. E. 983.

The meetings of the arbitrators were held in the office of the defendants' attorney. The third arbitrator was agreed upon on December 22, 1908, appointed on December 24, 1908, and the first meeting following his selection occurred on December 29, 1908; and at that meeting the attorney for the defendants said he could not proceed with the matter on that day owing to the absence of his arbitrator, but suggested, in the hearing of the third arbitrator and plaintiff's attorney, that they might enter into a stipulation as to the third arbitrator's compensation, and the attorney said, in substance, "I suppose he will get

$500 a house, which we shall share equally, the same as the umpire in the other two arbitrations received," referring to two arbitrations which were then closed, and in each of which by consent of the same attorneys $500 was paid to the third arbitrator. The attorney for the plaintiff made no protest against the discussion of this subject in the hearing of the third arbitrator, and proceeded to give expression to his views, which were in substance that he represented a voluntary association and could not enter into such a stipulation without first consulting his clients; that, while they had paid $500 to the third arbitrator in each of the other two arbitrations, each of those proceedings involved but a single lot; that this proceeding involved 31 lots, all in the same block; and that, when the value of one lot was determined, it would require little additional labor to reach a conclusion as to the others. He said he would consider the matter with his clients, whereupon the defendants' attorney said, addressing the third arbitrator as well as the arbitrator for the plaintiff: "I shall see you are paid. We control that under the leases." This concluded the discussion and the attorneys then agreed upon the adjourned day; and, after one or two subsequent adjournments, the next hearing took place on January 14, 1909, about two weeks after the hearing above referred to. When the arbitrators and attorneys assembled on this occasion, the subject of the third arbitrator's compensation was introduced by plaintiff's attorney, who said that he had conferred with his clients; that they could raise but $7,500, $5,000 of which would go to the plaintiff's arbitrator and $2,500 as the plaintiff's share of the compensation of the third arbitrator, and added: "I could not do any more than that." Then followed a general conversation similar to the one at the previous hearing, and during which the defendants' attorney again remarked he would see that the arbitrators were paid. Without further or more definite agreement both sides rested; it having previously been stipulated that the testimony taken before the two original arbitrators might be read by the third, and they proceeded to sum up, counsel for each side presenting his views as to the award, that should be made. Upon the conclusion of the summing up and the withdrawal of the attorneys the arbitrators proceeded to consider the proposed award. The plaintiff's arbitrator suggested that they examine the property. The third arbitrator said that was unnecessary, as he knew the property, and that from his reading of the testimony and the consideration he had given to the matter he was then prepared to decide the questions involved without further delay. In the discussion that ensued plaintiff's arbitrator discovered that the third arbitrator was not as favorable to the plaintiff's claim as he had anticipated, and upon the abrupt closing of the meeting communicated the fact to the attorney for the plaintiff, who thereupon sent to the defendant's attorney the letter of revocation above referred to. The attempted revocation was based on the claim that the third arbitrator was not fit and impartial, and that deception had been practiced upon the plaintiff in his selection and in the waiver of the real estate qualification. No complaint was then made of the discussion as to arbitrators' compensation. Unlike a referee, the compensation of an arbitrator must be determined by agreement, express or implied. If the compensation is not expressly agreed upon, the arbitra-

tor may maintain an action against the parties to recover on a quantum meruit. Ott v. Schroeppel, 3 Barb. 63, cited in 119 N. Y. 475, 24 N. E. 4. If the attorneys desired that a stipulation should be entered into as to the specific compensation to be paid to the third arbitrator, it was unnecessary to enter into a discussion such as took place in his presence. The subject should have been considered by the attorneys in the absence of the arbitrators; and, when they had agreed upon the proposed compensation, the proposition should have been submitted to the arbitrators as the joint suggestion of the parties. Counsel should not discuss such a matter in the presence of arbitrators, and should be scrupulous to avoid any act which would expose them to the suspicion of attempting to secure an undue advantage with the arbitrators. When persons have accepted an appointment to act as arbitrators, they assume a quasi judicial character, and become amenable to the same principles of justice which require judicial officers in the exercise of their function to be impartial between the parties.

While the conduct of defendants' attorney cannot be improved by the court, it is apparent, nevertheless, that the plaintiff's attorney saw no impropriety in it. If he did not deem the subject a proper one for consideration in the hearing of the arbitrators, he could have suggested, when the subject was introduced, that he and his opponent retire for conference. This he did not do. He interposed no objection and voluntarily revived the discussion at the ensuing meeting. In the interval of 15 days between the objectionable proposal and the close of the proceeding, the plaintiff, if he felt aggrieved, could have secured prompt and ample redress by instituting a suit in equity to stay further proceedings under the arbitration, and in such an action the misbehavior complained of might well justify temporary as well as permanent relief; but, having taken the chances of securing a favorable award, he will not now be permitted to raise this objection for the first time. The rule is of general application that a party who proceeds without objection after knowledge of irregularities will be deemed to have waived his right to object thereto. Fudickar v. Guardian Mut. Life Ins. Co., 62 N. Y. 405; Dayharsh v. Enos, 5 N. Y. 534; Day v. Hammond, 57 N. Y. 479, 15 Am. Rep. 522; Fox v. Hazelton, 10 Pick. (Mass.) 275.

In Fudickar v. Guardian Mut. Life Ins. Co., where, after the case was substantially closed, the arbitrator improperly wrote to one of the parties for further information, which was supplied, the court said:

"In this case the sending of the letter was not justified by anything which occurred on the trial. But after plaintiff was apprised of the proceedings of the arbitrator, if he disapproved of them, he should have then objected. He ought not to be permitted, after having laid by and taken the chance of a favorable award, to object when he finds the award against him." ·

In Fox v. Hazelton, supra, it appeared that a party to an arbitration received previously to the hearing sufficient notice of the partiality of one of three referees to put him on inquiry, but suffered the hearing to proceed without objection; and it was held that he was precluded from afterward excepting to the report of the referees on the ground of such partiality. It was there argued by the counsel for the aggrieved party that there was no court to inquire into the grounds of

the objection, if made, and that he had no alternative but to proceed; but the court, by Shaw, Ch. J., said:

"If the objection is known to the parties before the hearing and not disclosed and no exception taken, the objection must be taken to be waived and the consent of the parties be presumed that the hearing shall proceed. It is like the case of a challenge of a juror. If a party knows of any prejudice entertained by a juror and makes no exception when the jury is impaneled, however good his cause of challenge then is, it must be deemed to be waived. Otherwise, knowing of the secret taint to which the verdict may be exposed, he takes his chance for a favorable verdict, reserving the power to impeach it should it happen to be against him, a proceeding inconsistent with the plain principles of fair dealing and with the frankness which ought to characterize the whole course of judicial proceeding. Had the exception been taken at the hearing and the referees had persisted in proceeding, it would have been a strong ground of objection to the award. As he was content to proceed with the knowledge of the fact, relying upon the strength of his cause or the capacity and firmness of the other referees, he must be deemed to have waived his exception."

The plaintiff's present attitude is inconsistent with his acquiescence and active participation in the incidents now invoked to invalidate the award. That the plaintiff attached no importance to the subject and did not believe that it could affect the judgment of the third arbitrator may be inferred from the circumstance that the matter is not alluded to in the letter of attempted revocation. Indeed, it is clear that the incident did not prejudice the plaintiff. The parties were not far apart as to the "full and fair value" of the lots. The award is based on a valuation of one Brown, whose values in some instances are below the appraisal of plaintiff's experts. The real dispute was what percentage of the value of the lot would constitute a reasonable annual rent. Plaintiff's arbitrator urged a $2\frac{1}{2}$ per cent. basis, which was palpably inadequate; while the award fixed a 4 per cent. basis, which cannot be regarded as excessive. This result should not be disturbed. There is no evidence of partiality or misbehavior on the part of the arbitrators, and their award appears to be fair and reasonable. There can be no just cause of complaint against the award on the merits, and the complaint is dismissed, with costs.

Complaint dismissed, with costs.