(72 App. Div. 196.)

### BECKER v. WOARMS et al.

(Supreme Court, Appellate Division, First Department. May 23, 1902.)

TRIAL—INSTRUCTIONS—CREDIBILITY OF WITNESSES—INTERESTED PARTIES.

Where plaintiff's testimony is largely contradicted by other witnesses, the court cannot properly refuse to instruct that he is an interested witness, and the jury are not bound to accept his testimony as true, though he were uncontradicted or unimpeached, because it has instructed that in weighing his testimony the jury could consider his interest.

Hatch and Patterson, JJ., dissenting.

Appeal from trial term, New York county.

Action by George Becker against Albert L. Woarms and another, composing the firm of D. S. Hess & Co. From a judgment in favor of plaintiff, and an order denying a motion for a new trial, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Eugene Treadwell, for appellants.
Albert I. Sire, for respondent.

INGRAHAM, J. In this action the plaintiff seeks to recover from the defendants for the damages sustained by breach of a contract. The complaint alleged that defendants entered into a written contract on the 18th day of August, 1898, whereby they employed the plaintiff to manufacture, construct, and set up certain metal fittings and partitions, chiefly of bronze, according to certain specifications attached to said contract, and according to certain plans referred to therein, in the Albany Savings Bank, to be erected on the southwest corner of Pearl street and Maiden lane, Albany, N. Y., and the defendants agreed to pay the plaintiff for said work, when completed according to said contract, the sum of $6,850, and the making of two supplemental contracts to manufacture, construct, and put up certain additional bronze and metal work in the said building; that the plaintiff entered into the performance of the work stipulated by him to be done under the said three several contracts, and had a large part of such manufactured material delivered at said bank building in Albany, and the remainder thereof ready for delivery as fast as required, whereupon the defendants, without just cause or excuse, made claim that the work which the plaintiff was supplying and setting up on the job was not in accordance with the contracts and specifications, and, acting on that claim, the said defendants abruptly broke off said contracts by refusing to allow the plaintiff to perform and carry on his

work to completion, notwithstanding that said work conformed entirely to the requirements of said contracts; that the refusal of the defendants to accept the same, and the architect's refusal to certify that said work was correct, and his refusal to approve the same, were both unreasonable, and in no wise justified the defendants or said architect, or any one else with authority on the job, in stopping said work and preventing the plaintiff from carrying the same out to completion; that the plaintiff, upon being notified by the defendants by or on the 22d day of November, 1898, that they would not accept the work, notified the defendants, in turn, that the work was in conformity with the contracts, and then and there offered to proceed with the work to completion if the objections were withdrawn; and that, by reason of the defendants' default and violation of said contracts, the plaintiff has sustained damage in the sum of $7,373, for which he demands judgment. The breach of the contract is denied by the answer, and it is also denied that the work of the plaintiff conformed to the requirements of the contract; and the answer alleges that the refusal of said defendants to accept the same, and the architect's refusal to certify that said work was correct and to approve the same, were not unreasonable, but justify the defendants and the said architect in stopping said work and preventing the plaintiff from carrying the same out to completion.

The question as to whether there was a breach of the contract by the defendants was the material question to be determined upon the trial, and that depended upon the obligation of the defendants to accept and use in the construction of the building of the Albany Savings Bank the materials furnished by the plaintiff. The plaintiff testified that he met a Mr. Weschler, the superintendent of the defendants; that Weschler called a. Mr. Barmyer, who, he said, was a general draftsman employed by the defendants, and was the man to look over the job and superintend it; that the defendants had a contract with the Albany Savings Bank to furnish some bronze material; and that there resulted from this interview the original contract in writing between the plaintiff and the defendants, which was introduced in evidence. By this contract the plaintiff agreed to provide—

"All the materials for, and perform in a good and workmanlike manner, under the direction of Henry Ives Cobb, architect, and according to the plans and specifications of the said architect, all the work set forth and explained in said plans and specifications, which plans and specifications, being identified by the signatures of the parties hereto, are to be considered as forming a part of this agreement; and in case any particulars shall be deficient or not clearly expressed in said plans and specifications, the said party of the second part [plaintiff] will apply to the said architect for additional drawings and explanations, and will carry out the general design as directed by the said architect in a thorough manner, as part of the contract. And in case of any said work done or materials provided by the said party of the second part shall be unsatisfactory to the said architect, then the said party of the second part will, on being notified thereof by the said architect, immediately remove such unsatisfactory work or materials, and supply the place thereof with other work and materials, satisfactory to the said architect." It was also provided that "if any question should arise during the progress of the work, or in the settlement of accounts touching the same, it is to be referred to the said architect, whose decision shall be binding upon both parties"; that "the work under this contract is to be begun forthwith,

and carried on promptly, and to be completed to the satisfaction of the architect, as expressed by his written certificate, on or before November 1st, 1898." It was also provided that "in case of any failure or unreasonable delay of the said party of the second part [plaintiff], whether by act or default in the performance of any of the above stipulations or complaints with the true intent of these presents, not authorized in writing by the said party of the first part [defendants] or said architect, it shall be lawful for the said party of the first part or said architect, after giving five days' notice in writing of their intention to the said party of the second part, to provide other workmen and materials to complete the said work in the place of the said party of the second part, and to deduct the costs and charges thereby occasioned, for the sums otherwise becoming due to the said party of the second part under this agreement, without prejudice to any other remedy which the said party of the first part may have for breach thereof"; and "it is agreed that the decision of the architect as to whether there has been any failure or unreasonable delay in performance of any of the stipulations or compliance with the true intent of these presents, as mentioned in paragraph 4 in this contract, shall, in the absence of fraud or bad faith upon the part of Henry Ives Cobb, the architect, be final and conclusive upon the parties hereto, of which fact his certificate in writing shall be conclusive evidence."

The contract, by its terms, referred to the fitting and office partition for the "bank building of Albany Savings Bank, now being erected on the southwest corner of North Pearl street and Maiden lane, Albany, New York." The architect who, by the agreement of the parties to this contract, was to determine whether or not the work and materials furnished by the defendants was a compliance with the contract, was not an architect employed by either of the parties to the agreement, or representing either of them. He had prepared the plans for the building for the Albany Savings Bank, having charge of the construction of the building as between these defendants and the Albany Savings Bank, and whose approval of the work furnished by the defendants was necessary to enable the defendants to carry out their contract with the bank. The plaintiff knew the position in which the defendants stood, and he accepted the architect of the bank as the person who should have the power to determine whether or not the work that he did and the materials that he furnished were a compliance with his contract with the defendants, and that without his approval such work and materials would not be used by the defendants. Over this architect the defendants had no control. They were not in a position in which they could dispense with his services, or accept work furnished for the building without his approval. This condition was the one in reference to which the parties contracted.

We must keep in mind that the question to be determined is whether the plaintiff complied with his contract, for it is a compliance with that contract that he alleges, and the refusal of the defendants to allow him to complete his contract in the way that he had undertaken to complete it is the breach alleged. As before stated, the plaintiff went on to complete his contract; manufactured the articles that he had contracted to supply; and on the 4th of November a portion of them was delivered at the building in Albany. As soon as they were delivered, a Mr. Remington, who was an assistant of the architect in immediate supervision of the work, stated to the plaintiff that the bank people did not like the work, because Hess & Co. had promised the bank people all cast work, and probably there would be trouble in

having the work accepted; saying to the plaintiff, "I should advise you to stop with this work, and not go on and put up anything in the building." The following Saturday the plaintiff received a message from the defendants to come to New York to meet Weschler. At the interview that followed, Weschler said to the plaintiff that he had seen Mr. Cobb, the architect, and he wanted some changes made on the work, and asked the plaintiff whether he would do it, to which the plaintiff replied, "I will if you get leave to pay me an additional sum for that part, whatever I do, and then you must enter into a new contract." On the subsequent day, Weschler went to the plaintiff's shop, and told him he had better stop all "drawn work," and simply work on the "cast work." He said that they would not be accepted if they were wrought; that he (Weschler) did not know what the bank people wanted,—whether they wanted it wrought or cast,—and what portions they wanted cast. At this interview, Weschler said:

"Becker, I am very sorry. You made a first-class job, of its kind, but it is not the kind the architect wants, and I am sorry it is not what he wants. He is not satisfied with it."

At the time the plaintiff stopped work, he had done nothing upon the building except the foundation work for the metal work that he was to furnish. It is not alleged in the complaint that the right of the plaintiff to recover was based upon any act of the defendants by which the certificate of the architect, or the acceptance by him of the work, was waived by the defendants.

The architect was called on behalf of the defendants, and testified as to the character of the work done and materials furnished by the plaintiff; that Remington, who was his representative in charge of the building, informed him of the character of the bronze work furnished by the plaintiff; that he went to Albany and saw the bronze work, and that it was entirely different from what is called for by the drawings; and he explained in detail the particulars in which the materials that he rejected failed to comply with the contract and drawings. The defendants then offered in evidence the contract between the defendants and the Albany Savings Bank, which was objected to by the plaintiff, and excluded by the court.

The plaintiff was informed before he made this contract with the defendants that the defendants were erecting this building for the Albany Savings Bank, and that it was to comply with their contract with the bank that this subcontract between the plaintiff and the defendants was made. The contract between the plaintiff and the defendants was therefore made in express reference to the contract between the defendants and the bank; and I think this contract was competent evidence to show that, under their contract with the bank, the defendants were prevented from using a portion of the materials furnished by the plaintiff in the performance of their work under their contract with the bank, and that the determination of the architect was made in good faith under that contract. When the plaintiff refused to comply with the directions of the architect, and furnish the bronze work according to his construction of the requirements of the contract and plans and specifications between the plaintiff and the defendants, the defendants were placed in the situation which this provision in the

contract (requiring the work and materials furnished by the plaintiff to be approved by the architect, and providing that, in case any of said work done or materials furnished should be unsatisfactory to him, the plaintiff would remove such unsatisfactory work or materials, and supply the place thereof with other work and materials satisfactory to the said architect) was designed to meet, so that the defendants would not be required to accept a performance of the contract by the plaintiff which would not be accepted by the bank as a compliance by the defendants with it. There is no contradiction of the testimony of the architect that this work was not satisfactory to him, and was not such as he would allow to be used in the erection of this building. Nor is there anything to impugn the good faith of the architect in the determination to which he had arrived, nor anything to show that that refusal was arbitrary or unreasonable. The plaintiff has testified that, in his opinion, the work was such as was called for by the contract. The architect has determined that the work was not such as was called for by the contract, and was not satisfactory to him; and by the agreement between the parties it was the determination of the architect that was to control, in the absence of fraud or bad faith, and there is no allegation or evidence to justify a finding that there was any bad faith or fraud in the action of the architect in the determination at which he arrived.

The case narrows itself down to the one question: Was it the defendants who were guilty of a breach of the contract, because they refused to allow the plaintiff to continue to supply work and materials which the architect had determined were not in accordance with the contract, and not satisfactory to him; or was it the plaintiff, who, when he was informed of the determination of the architect that the materials that he had furnished were not satisfactory, and were not in accordance with the contract, refused to comply with the direction of the architect, and furnish the materials as directed by him? It seems to me that it was the plaintiff who was guilty of a breach of the contract, and not the defendants, and that the plaintiff had, therefore, failed to prove the crucial fact upon which his cause of action depended.

Both at the end of the plaintiff's case and at the close of the testimony the defendants moved to dismiss the complaint upon the ground that there was no evidence that the defendants had been guilty of a breach of the contract. This motion was denied, and the defendants excepted. The learned trial judge then submitted the question to the jury as to whether the plaintiff had complied with his contract, and they were directed that the determination of that question depended upon whether the jury found as a fact that the work and materials furnished by the plaintiff were such as were called for by the contract. The jury were not instructed that a performance of the plaintiff's contract required him, if any of the work done or materials furnished was not satisfactory to the architect, to replace such work and materials with work and materials that were satisfactory to him, but were left to determine whether the architect had decided correctly when he rejected the materials furnished by the plaintiff, and required him to furnish other materials.

The court charged the jury:

"The defendants deny that the plaintiff has done any work in accordance with the plans and specifications, and they say that for that reason they should not be compelled to pay him anything, so that you will see the question for you to determine is, has the plaintiff done the work that he contracted to do, in accordance with the plans and specifications furnished by the defendants. If he has, he is entitled to recover the sum that he has sued for. If he has not, he is not entitled to recover that sum."

In relation to the provision of the contract as to the determination of the architect, the court charged:

"The contract contains a certain statement, or a statement in various forms, that it is to be to the satisfaction of the architect. I charge you that that means the reasonable satisfaction of the architect. If the architect, as a reasonable man, ought to have been satisfied with it, then the law says that he was satisfied with it, although, as a matter of fact, he refused to accept it. Was the work in compliance with the plans and specifications, or not? It may be, as between the defendants and the owners of the building, the architect would have the right to reject the work, because it may be that the work did not comply with the contract between the defendants and the owners of the building; but that is immaterial, so far as you are concerned, for the question for you is, did the work comply with the contract made by the plaintiff and the defendants?"

Counsel for the plaintiff excepted to this portion of the charge. The defendants requested the court to charge that:

"Before the plaintiff can successfully assert that there has been any breach of contract on the part of the defendants, and recover a verdict in his favor, you must be satisfied that there has been no breach of the contract on his part; for, if there has been any breach of contract on his part, that defeats his claim, and your verdict must be for the defendants."

And the same question was presented in several other requests, which were all refused, and to which defendant excepted.

In my view of this contract, and considering the theory upon which the action was brought, I think these requests to charge were correct, and that it was error to refuse them.

The main principle to be applied in this case was applied in the case of Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276, 15 Am. St. Rep. 376. There the defendants had entered into a contract with the Northern Pacific Railroad Company to furnish materials and build a part of its road; the contract providing that the work should conform to the specifications annexed, and to the construction and direction of the chief engineer of the railroad company. The defendants entered into a contract with the plaintiffs to construct the bridges, trestles, and other timber work required by the contract between the defendants and the railroad company. They agreed to perform their contract to the satisfaction of the chief engineer of the railroad company, and he was made an umpire to decide all matters arising or growing out of the contract between the plaintiffs and the defendants, and his decision was to be final and conclusive between the parties. The chief engineer made a determination as to the work and materials furnished by the plaintiffs which was not satisfactory to the plaintiffs, whereupon the plaintiffs sued to recover for the work and materials furnished in excess of that allowed by the certificate of the engineer. The court commented upon the fact that the person selected

by the parties to make the estimate was in the employ of neither, and the case, therefore, was unlike those so frequently arising in which the certificate or estimate is required from the architect or engineer in the employment of one of the parties, and said:

"The intention of the parties to make it [the estimate] final is evident from the language used in their own agreement, and it is emphasized by the reference to the agreement between the railroad company and the defendants, which contains a provision making the estimate of the same person conclusive upon the parties to that instrument also. The defendants evidently intended that the work which they had agreed to do for the railroad company, and which they sublet at a profit to the plaintiffs, should be estimated under both contracts by the same person, so that the estimate which was conclusive between the railroad company and themselves should also be conclusive between the plaintiffs and themselves. The plaintiffs, by signing their contract, united with the defendants in the effort to carry this intention into effect. The construction of the contract, its performance, and all matters of difference that might arise in relation thereto, were submitted in advance to the chief engineer, whose decision was made final and conclusive upon both parties. * * * Furthermore, it was made a condition precedent to the payment of the plaintiffs that the chief engineer should furnish to the defendants his certificate that the work had been completely finished in every respect according to the stipulations and specifications, together with his estimate of the quantity of the work done, which estimate, it was agreed, should not only be final and conclusive upon both parties, but it was also fixed upon as a basis to determine the amount due to the plaintiffs. Compliance with this provision thus became a condition precedent to any recovery by the plaintiffs. * * * The merits of an award, however unreasonable or unjust it may be, cannot be reinvestigated, for otherwise the award, instead of being the end of the litigation, would simply be a useless step in its progress. The parties provided by full and explicit stipulations for a final and conclusive estimate by the chief engineer, as an essential prerequisite to any payment by the defendants. Of what value are these carefully drawn provisions, if a mistake is to open the whole matter, and throw it into the courts for re-examination?"

And this case has been cited and followed in several late cases. In re Wilkins, 169 N. Y. 494, 62 N. E. 575; National Contracting Co. v. Hudson River Water Power Co., 170 N. Y. 439, 63 N. E. 450.

Assuming, however, that the defendant was not entitled to the direction of a verdict, there was certainly a question of fact for the jury as to whether the architect acted in good faith in rejecting the plaintiff's work as not in compliance with the plans and specifications, and determining that the materials were not in accordance with the contract, and that, if he did, the refusal of the plaintiff to supply other materials in accordance with his decision was a breach of the contract by the plaintiff which precluded a recovery in this action; and the defendants were entitled to have the jury instructed upon that point. The court left it to the jury to say whether, if they had been the architect, they would have decided as he did; instructing them that if the plaintiff furnished the goods according to the contract, notwithstanding the refusal of the architect to accept the work, the plaintiff was entitled to a verdict. I think that in view of the provisions of this contract, and in the situation that existed, that was a false issue to submit to the jury, and that the real question was the one that the court refused to submit.

There is one other request to charge, to which I think the defendants were entitled. The court had stated that, in determining what

weight there should be given to the evidence of a witness, they might consider his interest in the result of the litigation; that the plaintiff, "of course, is interested in the result of the litigation, and the defendant Lesser is interested in the result of the litigation, because he is one of the persons that is sued, just the same as the plaintiff is the person that sues; and, in determining how much weight you shall give to the testimony of these witnesses, you will consider that fact." The defendants requested the court to charge that "Becker is an interested witness, who, if successful, will recover the fruits of this litigation; and you are not bound to believe him, even though he were uncontradicted or unimpeached." This the court refused to charge, and the defendants excepted. I think the defendants were entitled to have this request charged. An examination of this testimony will show that Becker again and again testified to facts which were contradicted by every other witness who testified upon the subject. He testified to promises made to him by Barmeyer and Weschler, which these witnesses contradicted. He also testified to occurrences which were contradicted by other witnesses. The court instructed the jury that, in weighing his testimony, they could consider his interest; but the defendants were also entitled to have the jury told that, he being an interested party, although they were to consider his testimony in the light of his interest in the controversy, they were not bound to accept his testimony as true, although uncontradicted or unimpeached.

There was evidence tending to show that some of the materials furnished by the plaintiff, which were delivered at the savings bank, and which the plaintiff refused to remove when rejected by the architect, were subsequently used in the construction of the building. That the plaintiff would be entitled to recover the reasonable value of the materials thus used, in a proper action, may be conceded; but a recovery for such articles could not be had in an action brought to recover the damages sustained by a breach of the contract by the defendants, in which plaintiff failed to prove the breach alleged.

There are other questions presented, which it is not necessary to determine, as, for the reasons above stated, there must be a new trial.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., concurs.

LAUGHLIN, J. I concur in the reversal of this judgment on the ground that it was error for the court to refuse to instruct the jury that, in view of the plaintiff's interest in the recovery, the jury were not obliged to believe him. The right to recover rested upon the uncorroborated testimony of the plaintiff, which was not altogether probable. In these circumstances, the jury should have been clearly instructed that, if they deemed his evidence improbable, they were not obliged to accept it, even though it was uncontradicted, and he was not impeached.

PATTERSON, J. (dissenting). I am unable to concur in the opinion of the majority of the court in this case. If there were nothing

else involved in it than what is referred to in that opinion, I might
coincide in some of the views therein expressed; but the real question
at issue, as the case came before us, is totally ignored in the prevail-
ing opinion, and it seems to me that the rights of the parties are to
be determined upon facts which are not even casually adverted to in
that opinion.

The action was brought to recover damages for the breach of con-
tracts by which the defendants bound themselves to pay for certain
work to be done and materials to be furnished by the plaintiff in fitting
up part of a savings bank building in Albany. The materials and
workmanship were·to be to the satisfaction of an architect employed
by the savings bank, and were to be paid for upon the presentation
of the final certificate of that architect. The plaintiff's theory of the
action is that he is entitled to recover damages for the breach of the
contracts, the defendant having wrongfully refused to allow him to
go on to the complete fulfillment of such contracts. The breach by
the defendants is alleged to have been such as relieved the plaintiff
from the necessity of producing a certificate of the architect. It is
well settled that the refusal to permit a contractor to go on with his
work is a virtual repudiation of the contract, and gives him an im-
mediate cause of action, and relieves him from the obligation to pro-
duce the certificate of an engineer or architect required by contract
as a condition of payment. Smith v. Wetmore, 167 N. Y. 234, 60 N.
E. 419. If the plaintiff, up to the time at which the defendants re-
fused to accept the material he furnished, had performed the terms
of the contracts between the defendants and himself according to their
mutual understanding of what was to be done under those contracts,
then the defendants are liable for the damages caused by their breach.
The matter in issue here is between the plaintiff and the defendants.
The Albany Savings Bank, with which the defendants had contracted
for the whole work of constructing the building, has nothing to do
with that issue. By the contracts made between the plaintiff and the
defendants, certain work was to be done and materials furnished ac-
cording to plans and specifications. The plaintiff had almost com-
pleted the work under the contracts. Most of the manufactured ma-
terial had been shipped to be put in place in the savings bank building,
and a small part of it was ready to be shipped. The plaintiff alleges
that the work had been done and the material had been manufactured
in accordance with the plans and specifications, and the evidence shows
that the bulk of the manufactured material which had been delivered
at Albany had been approved by the architect's representative. The
plaintiff claimed that all the materials furnished corresponded with the
requirements of the plans and specifications. The defendants insisted
that the work had been rejected because it was not in conformity with
the contracts, plans, and specifications. They denied that the archi-
tect had unreasonably refused to certify to the sufficiency of the work
or materials, and insisted that the refusal to give a certificate was
justified, and they undertook to show wherein the manufactured ma-
terial furnished by the plaintiff did not accord with the plans and
specifications. In answer to that, the plaintiff showed by proof that
the material which had been rejected by the defendants in conse-

quence of the action of the architect was manufactured in accordance with the interpretation of the plans and specifications, as given by those authorized to act for the defendants in the absence of the architect.

Bearing in mind that we are considering these contracts only as between the parties to them, and that for all the purposes of this litigation the Albany Savings Bank is an absolute stranger to the contest, the situation of the parties on the record before us is the following: The plaintiff alleges substantial performance up to the time he was prevented by the defendants from further performance. The defendants justify their act of prevention by saying that the material furnished, up to the time they intervened to prevent, did not accord with the plans and specifications, and that the architect, who was the arbiter, so decided, to which the plaintiff rejoined that the defendants, through their agents, gave a construction to the plans and specifications, in strict accordance with which construction the plaintiff went on and manufactured the material. By the contracts between the plaintiff and the defendants, the architect was to determine whether the work accorded with the plans and specifications, but that architect was a resident of Washington, in the District of Columbia, and was not accessible when questions arose as to the manner in which the material to be furnished by the plaintiff under the contracts should be manufactured. The plans and specifications of the contracts had been drawn by the head of one of the departments of the defendants' business, and the work to be done by the plaintiff was superintended by another skilled employé of the defendants. Questions arising during the progress of the work as to the proper method of manufacture of the material under the specifications, and doubt arising as to that method, the plaintiff, according to his testimony, called upon Mr. Lesser, one of the defendant copartnership, and was told by Mr. Lesser to follow the instructions or the interpretation of the plans and specifications that should be given to him by those two persons, namely, the head of the drafting department and the superintendent of the defendants' business. Therefore there was in the case evidence, which the jury believed, that in the absence of the architect the plaintiff was required by the defendants to do the work in accordance with the interpretation of the plans and specifications given by the defendants' agents, and, when they came into accord as to the requirements of the plans and specifications, there was nothing left to be referred to the architect. The subject presented is not one of modification of the contracts, which would have to be pleaded, but of the agreed interpretation of the terms or requirements of the plans and specifications as they existed. If the defendants induced the plaintiff to go on with the work under those circumstances, they chose in that particular respect to determine for themselves what was required, and thus it became unnecessary to seek the judgment of the inaccessible architect, and the plaintiff was authorized to go on in performance of the work precisely as he did in executing the contract.

I think that the right of the plaintiff to recover is plain, and that the judgment ought to be affirmed, with costs.

HATCH, J., concurs.