## WOARMS et al. v. BECKER.

(Supreme Court, Appellate Division, First Department. June 19, 1903.)

1. BUILDING CONTRACTS—SUBCONTRACTS—BREACH.

Where defendants made a subcontract to furnish the bronzework for a bank with express reference to the original contract, which required all work and materials furnished to be approved by the bank's architect, and declared that if any work or materials should be unsatisfactory to such architect the contractor would remove the same and supply other work satisfactory to the architect, such provision became a part of the subcontract, and the subcontractor was liable to the contractor for a breach of contract in refusing to furnish other bronzework in the place of work furnished which was rejected by the architect.

2. SAME—WAIVER—EVIDENCE.

In an action for breach of a subcontractor's agreement to furnish certain bronzework for a building in conformity to plans and specifications, evidence *held* insufficient to authorize a finding that work constructed not in conformity with the specifications, which was rejected by the architect, had been constructed under the contractor's express directions.

3. SAME—EVIDENCE—OPINION.

In an action for the breach of a subcontract to furnish bronzework for a building, in furnishing work not complying with the specifications, evidence that witness, a manufacturer of bankwork, called on the contractors and stated that he knew the work done by the subcontractor was a first-class job, was incompetent, as a mere expression of opinion.

4. HEARSAY—RELEVANCY.

In an action for breach of a subcontract to furnish brasswork for a bank, evidence that the architect's superintendent had stated that if defendant had known that the work was to be all cast he would have made a satisfactory job, and that the only fault was that the contractors did not know what kind of a job the bank desired, was hearsay and irrelevant.

5. SAME—INSTRUCTIONS.

Where, in an action for breach of a subcontract to furnish brasswork for a bank building, on the ground that the work furnished did not comply with the specifications, defendant claimed that the specifications had been waived, and the evidence required a submission of the question whether plaintiffs intended to waive the specifications to the jury, it was error to charge that, if a certain conversation testified to by defendant as having taken place between himself and plaintiff occurred, such conversation constituted a waiver.

Appeal from Trial Term, New York County.

Action by Albert L. Woarms and another against George Becker. From a judgment in favor of defendant, and from an order denying plaintiffs' motion for a new trial, they appeal. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Eugene Treadwell, for appellants.

Albert I. Sire, for respondent.

HATCH, J. This action is brought to recover damages for the breach of a subcontract for the furnishing of bronze and other work in the construction of the Albany Savings Bank, at the city of Albany, in this state. Both parties claimed a breach of the particular contract, and each party has brought an action against the other to recover damages therefor.

The action in which the present defendant is plaintiff was previously tried and a verdict rendered therein by the jury, awarding damages in his favor. Upon appeal from the judgment entered thereon, this court reversed the same for errors committed in the charge of the court to the jury. In reaching a conclusion therein, considerable discussion was had, the court dividing in its opinion, a majority agreeing to reverse the judgment for errors committed in submitting the case to the jury. Becker v. Woarms, 72 App. Div. 196, 76 N. Y. Supp. 438. The opinion of Mr. Justice Ingraham, delivered upon the former appeal, discusses in detail the terms of the respective contracts; that between the plaintiffs in this action and the Albany Savings Bank, and the subcontract between the plaintiffs herein and the defendant. They are the same contracts which appear in the present record, and are fully and completely stated in the opinion. It is not, therefore, essential that we restate them now.

The record in the present case, in view of the former decision and the division of the court thereon, has been the subject of careful and deliberate examination, with a view of harmonizing, so far as possible, the variance in view which previously existed. The evidence in the present case does not materially differ from the evidence which appeared in the former record, and does not differ at all as to the relations which existed between the parties themselves, their attitude towards the Albany Savings Bank, and the control of the architect in passing upon the fulfillment of the contract.

The examination which has been had leads us to the conclusion that the following language, contained in the opinion of Mr. Justice Ingraham, expresses the correct rule of law to be applied to the present controversy, and governs the respective parties in disposition of the same. Therein it was said:

"The plaintiff [Becker] knew the position in which the defendant stood, and he accepted the architect of the bank as the person who should have the power to determine whether or not the work that he did and the materials that he furnished were a compliance with his contract with the defendants [plaintiffs herein], and that without his approval such work and materials would not be used by the defendant. Over this architect the defendants [plaintiffs herein] had no control. They were not in a position in which they could dispense with his services, or accept work furnished for the building without his approval. This condition was the one in reference to which the parties contracted. * * * The plaintiff [Becker] was informed before he made this contract that the defendants [plaintiffs herein] were erecting this building for the Albany Savings Bank, and that it was to comply with their contract with the bank that this subcontract between the plaintiff and defendants was made. The contract between the plaintiff and the defendants was therefore made in express reference to the contract between the defendants and the bank, and I think this contract was competent evidence to show that under their contract with the bank the defendants were prevented from using a portion of the materials furnished by the plaintiff in the per-

formance of their contract with the bank, and that the determination of the architect was made in good faith under that contract. When the plaintiff [Becker] refused to comply with the directions of the architect and furnish the bronzework according to his construction of the requirements of the contract and plans and specifications between the plaintiff and defendant, the defendants were placed in the situation which this provision in the contract [requiring the work and materials furnished by the plaintiff to be approved by the architect, and providing that, in case of any of said work done or materials furnished should be unsatisfactory to him, the plaintiff would remove such unsatisfactory work or materials and supply the place thereof with other work satisfactory to said architect] was designed to meet, so that the defendants would not be required to accept a performance of the contract by the plaintiff which would not be accepted by the bank as a compliance by the defendants with it. There is no contradiction of the testimony of the architect that this work was not satisfactory to him, and was not such as he would allow to be used in the erection of this building. Nor is there anything to impugn the good faith of the architect in the determination to which he had arrived, nor anything to show that that refusal was arbitrary or unreasonable. The plaintiff [Becker] has testified that in his opinion the work was such as was called for by the contract. The architect has determined that the work was not such as was called for by the contract, and that it was not satisfactory to him, and, by the agreement between the parties, it was the determination of the architect that was to control in the absence of fraud or bad faith, and there is no allegation or evidence to justify a finding that there was any bad faith or fraud in the action of the architect in the determination at which he arrived."

In the present case it appears that the defendant understood the effect of his contract, as he stated, when the dispute arose, that he understood the architect was the arbiter; and when Remington, his representative, refused to permit the bronzework to be put into the building, the defendant, Becker, acquiesced in samples of the work which he had furnished being sent by express to the architect for his approval; and it is undisputed that the architect, upon the reception of these samples, approved of the castwork, and disapproved of the drawn or hammer work, and refused to permit it to be placed in the building. Standing, therefore, upon the construction of the contract, the rights of the bank, and the action of the architect, it necessarily follows that when the defendant, Becker, refused to proceed with the work after the architect had rejected the same, he was guilty of a breach of contract, and rendered himself liable to respond in damages for the consequence of such breach.

If this were the only question which the case presented, it is clear that the plaintiffs were entitled to recover in this action, and that they were under no liability to Becker, as they had been guilty of no breach. The defendant, however, claims that the plaintiffs, in pursuance of an agreement and through their agents, directed him to construct the bronzework in the precise manner in which it was constructed; that he was bound to follow their direction, and, so far as it departed from the contract, the plaintiffs were responsible therefor, as the defendant had no alternative but to do as they told him. Undoubtedly it is true that it was competent for the plaintiffs herein to make a construction of the contract, the plans, and specifications for themselves, without regard to the architect, so far as concerned the performance by Becker of his contract; and the latter would undoubtedly be justified in following the specific directions of the plaintiffs, and their construc-

tion of the plans and specifications; and if this was what he did, they were alone responsible for the departure, and the defendant, Becker, in following such specific directions, would be protected in so doing, even though they were not in compliance with the contract between the plaintiffs and the bank, or with his own contract, and were rejected by the architect. While the architect would not be bound to accept, nor the bank bound to permit, the work to be placed in its building, yet such fact is not the controlling feature, if the plaintiffs and defendant agreed in terms as to the character of the work and construction which Becker was to make, and he fulfilled it in accordance with such agreement. The plaintiffs would then have no cause of action against Becker, even though there was in fact a departure from the plans and specifications. This, therefore, becomes the crucial question in this case.

Upon this subject Becker testified that, after a dispute had arisen as to the character of the work, he had the following conversation with Lesser:

"I [Becker] said, 'If I can help out anybody by taking this apart and making it smaller—I had a portion of it finished already—I will be willing to do so.' I went downstairs and seen Mr. Lesser, and said, 'There is Mr. Barmeyer asking me to change the width of the partition. Under the contract we should ask the architect about it and get his permission, as I understand the contract.' Mr. Lesser said, 'Mr. Becker, you cannot see the architect; he is not in the city. He has got an office in Washington and Chicago, and none here in the city. Whatever directions you get from Barmeyer and Wechsler you will follow, and take them as if they came from the architect direct.' I said, 'All right; if that is the case, I will go to work and do that.' That was in the private office."

Wechsler and Barmeyer were respectively the superintendent and draftsman employed by the plaintiffs. No persons were present at the time of the claimed conversation with Lesser, and there was no corroboration of the defendant in respect thereto. The defendant testified that subsequent to this conversation he took his directions from Barmeyer and Wechsler, and followed them implicitly; that Barmeyer was frequently at his manufactory in the city of New York, where the bronzework was prepared, saw the same in process of construction, gave directions concerning it, and expressed his approval of the work as it was finished; that Wechsler also gave directions concerning the same, approved of the work as it was done, and directed it to be placed in the building, and, when objection was made thereto, argued with the representatives of the architect and the bank that it was in compliance with the contract and should be accepted as such. There was some other evidence of workmen and employés, who testified to Barmeyer's presence at the factory, and his approval of the work as it was in progress. In the main, however, testimony as to the waiver of the provisions of the contract came to rest almost exclusively upon the testimony of the defendant, and entirely so as respects the authorization of Lesser to him to follow the directions to be given by Barmeyer and Wechsler.

Upon this subject, it is undisputed that the work which was tendered as a performance of the contract did not comply therewith, or

if it did in some respects, or if there was doubt and ambiguity in the specifications (of which there was some evidence), yet all of these matters were the subject of determination by the architect, who was the arbiter, and was so understood to be by all of the parties to the contract. The evidence is undisputed, showing a departure from the terms of the contract, wherein stipulations precisely governing the same had been reduced to writing, which all of the parties understood and by which they were bound. The departure from the contract by the defendant is therefore established. The statement of the defendant was expressly contradicted by the plaintiff Lesser, who testified that he never gave the authorization claimed by the defendant, and also by that of Barmeyer and Wechsler that they never gave any directions to the defendant to depart from the terms of the contract; that they had no authority so to do; and that, whenever any subject of dispute arose with respect to whether there was compliance with the terms of the contract or not, the subject-matter thereof was immediately referred to the architect for his determination. In this regard they are corroborated by the letters which passed between themselves and the architect, and between themselves and the defendant. Wechsler explains that he did try to get the bank to accept the work as completed by Becker after he had completed and delivered it at the bank, and did urge that it was in compliance with the contract; that he knew at the time it was not, but undertook so far as he could to relieve Becker from the dilemma in which he had placed himself.

The case upon the fact of waiver, therefore, comes to rest practically upon the testimony of the defendant, which is at variance with the written contracts, is disputed by the correspondence between the parties and by the direct oral testimony of three witnesses upon the crucial question, and by several others upon collateral matters. Evidence to overthrow a written contract, containing precise stipulations and providing for an arbiter to settle all matters in performance of the same, requires clear and convincing proof. Where the oral proof upon which reliance is had to overthrow the force and effect of such a contract is disputed and contradicted by a greater number of witnesses of at least equal standing with him who asserts the claim, and where there is no inherent improbability in the statements made by such witnesses, the claim of waiver of the written contract must be regarded as not established, and a verdict founded upon such testimony should be set aside as being against the clear weight of the evidence. This verdict should therefore not be permitted to stand for this reason.

In addition to this, numerous errors appear in this record which require a reversal of the judgment. Upon the trial, the defendant called as a witness William Grosback. He testified to calling at the office of the plaintiffs with the defendant after the work had been rejected; and over the objection and exception of the plaintiff, such witness was permitted to testify to the following:

"Mr. Becker said, 'This is Mr. Grosback; he is a manufacturer of bank-work, and he can tell you all about that job.' Mr. Woarms said, 'What do you know about that job?' I said, 'I know it is a first-class job.' He said, 'We don't want nothing at all to do with you; we don't want you here.'"

The plaintiffs then moved to strike out this evidence as being the opinion of the witness. The motion was denied, and an exception taken. The defendant also testified, over objection and exception, to this conversation. This evidence was clearly incompetent. It was not the statement of any fact, but was the expression of an opinion upon the part of the witness, which was entirely irrelevant to the issue of waiver, and in no sense did it bear thereon. Its tendency was to mislead the jury and prejudice the plaintiff's case; no authority is needed to condemn it. There are many other statements which were proven in the case over the objection and exception of plaintiff, where the defendant was permitted to testify to statements made by Remington, the architect's superintendent, to the effect that if the defendant had known that the work was to be all cast he would certainly have made a satisfactory job, and that the only fault was that the plaintiffs did not know what kind of a job the bank people wanted. These statements were the mere declarations of a stranger, were hearsay and incompetent, and were not relevant to the issue. Hubbard v. Brown, 35 App. Div. 255, 54 N. Y. Supp. 749; Keister v. Rankin, 29 App. Div. 630, 51 N. Y. Supp. 634. There are other errors in the case in the reception of testimony, but it is not necessary that we should farther comment thereon.

The court also committed error in its charge to the jury. Upon request of the defendant, the court charged:

"(1) If the jury believe that the defendant was instructed by Mr. Lesser to follow all orders in reference to the work given by Wechsler or Barmeyer, instead of sending him to the architect, that constituted a waiver of all claims and conditions in the contract that the job must be executed to the architect's satisfaction, and that he must apply to architect for directions in order to make it acceptable. (2) If the jury believe that Wechsler and Barmeyer did give Becker instructions, pursuant to Lesser's authority, about the style and character of the work, and he followed them, then their waiver of such clauses and conditions was complete, and their verdict must be for defendant. (3) If the jury believe that, after receiving such authority from Lesser, the work was executed to the satisfaction of Wechsler and Barmeyer, then it was done to the satisfaction of plaintiffs, and their verdict must be for defendant."

To these requests exception was taken. This charge proceeded upon the theory that if the conversation was had between the plaintiff and Lesser, as testified to by defendant, it constituted a waiver of the terms and conditions of the contract as matter of law. Such is not the rule. It did not necessarily follow that, if that conversation was had, there was a waiver of the terms and conditions of the contract as matter of law. The question was for the jury as to whether there was an intention to waive, and whether, upon the facts as they should find them to exist, the defendant did waive the terms and conditions of the contract. This was a question of fact, and not of law for the determination of the court, and the court was not authorized to charge its effect as matter of law. It excluded all the other facts and circumstances in the case from consideration by the jury, from which the intention to waive and the waiver itself were to be derived, and left it to stand upon the bare statement that, if the jury believed that the instruction was given by Lesser, it constituted a waiver as matter of

law.   This was clear error.   Cass v. Third Ave. R. R. Co., 20 App.
Div. 591, 47 N. Y. Supp. 356; Kain v. Smith, 89 N. Y. 375; Osborn
v. Gantz, 60 N. Y. 540.   In order to authorize such a charge, the evi-
dence relied upon to work the legal result must exclude all inferences
contrary to such a conclusion.   Morrissey v. Westchester El. R. Co.,
18 App. Div. 67, 45 N. Y. Supp. 444.   In the present case there were
numerous elements which would exclude an intention to waive or the
act of waiver, even though the jury believed that the statement of
Lesser was made as testified to by the defendant.   Such question upon
the whole case was therefore for the jury, and it could not be limited
to the particular testimony upon which to found their verdict as matter
of law.   Fox v. Harding, 7 Cush. 516.

It follows that the judgment and order should be reversed and a new
trial granted, with costs to the appellants to abide the event.

INGRAHAM, McLAUGHLIN, and LAUGHLIN, JJ., concur.

PATTERSON, J., concurs in result, on the ground of errors in
rulings upon evidence and in instructions given to the jury.